91



Darryl Carter
2121 Meridian Park Blvd Unit #6701
Concord, CA 94520
Phone: 650-250-9404
Email: mdcar38t@protonmail.com

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

HSG

|  |  |
|---|---|
| Darryl Carter, <br><br> Plaintiff, <br><br> vs. <br><br> Uber Technologies, Rasier-CA, LLC, <br><br> Travis Kalanick <br><br> Defendants | Case No.: <br> CV17 3 <br><br> VERIFIED COMPLAINT FOR LEGAL, DECLARATORY, AND INJUNCTIVE RELIEF <br><br> 29 U.S.C. § 201 ET SEQ., <br> 29 U.S.C. § 216 (b), <br> 29 U.S.C. § 217, <br> 28 U.S.C. § 2201, <br> INTENTIONAL MISRESPRESENTATION, <br> NEGLIGENT MISREPSENTATION, <br> NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS, <br> IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALINGS <br><br> JURY TRIAL DEMANDED |

~ 1 ~

VERIFIED COMPLAINT FOR LEGAL, DECLARATORY, AND INJUNCTIVE RELIEF

# TABLE OF CONTENTS

PARTIES ........................................................................................... 5

JURISDICTION AND VENUE ....................................................... 5

FACTUAL BACKGROUND ........................................................... 6

COMMON ALLEGATIONS ........................................................... 14

CAUSES OF ACTION .................................................................... 18

  COUNT I .................................................................................... 18

    FSLA MINIMUM WAGE CLAIM ........................................ 18

  COUNT II ................................................................................... 19

    FSLA OVERTIME WAGE CLAIM ...................................... 19

  COUNT III ................................................................................. 20

    FSLA RECOVERY OF EQUIPMENT COSTS CLAIM ....... 20

  COUNT IV ................................................................................. 21

    INTENTIONAL MISREPRESENTATION ........................... 21

  COUNT V .................................................................................. 23

~ 2 ~

VERIFIED COMPLAINT FOR LEGAL, DECLARATORY, AND INJUNCTIVE RELIEF

NEGLIGENT MISREPRESENTATION ................................................. 23

COUNT VI ................................................................................................ 26

NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS ................................. 26

COUNT VII ............................................................................................... 27

BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR

DEALINGS ........................................................................................... 27

PRAYER ................................................................................................... 28

DEMAND FOR JURY TRIAL .................................................................... 32

VERIFICATION ......................................................................................... 33

EXHIBIT A ............................................................................................... 34

EXHIBIT B ............................................................................................... 38

EXHIBIT C ............................................................................................... 51

EXHIBIT D ............................................................................................... 73

EXHIBIT E ............................................................................................... 75

EXHIBIT F ............................................................................................... 77

~ 3 ~

VERIFIED COMPLAINT FOR LEGAL, DECLARATORY, AND INJUNCTIVE RELIEF

EXHIBIT G .................................................................................................. 82

EXHIBIT H .................................................................................................. 85

EXHIBIT I .................................................................................................. 88

~ 4 ~

VERIFIED COMPLAINT FOR LEGAL, DECLARATORY, AND INJUNCTIVE RELIEF

**PARTIES**

1.

Rasier-CA, LLC is a wholly owned subsidiary of Uber Technologies collectively herein referred to as Uber. The CEO and co-founder of Uber, is Travis Kalanick. Mr. Kalanick is, also, a resident of the state of California. Upon information and belief, Mr. Kalanick oversees Uber policies and driver contracts which are made or solidified following Mr. Kalanick's expressed authority, approval and/or review. Furthermore, upon information and belief Mr. Kalanick overseeshe hiring  of and establishment of direction and goals for key personnel related to virtually all if not all areas of the business including but not limited to marketing, advertising, and Uber growth.

2.

Darryl Carter is an individual residing in the State of California, within the Northern District of California, and is the Plaintiff in this action.

**JURISDICTION AND VENUE**

3.

VERIFIED COMPLAINT FOR LEGAL, DECLARATORY, AND INJUNCTIVE RELIEF

Plaintiff brings this action pursuant 29 U.S.C. § 201 et seq. Plaintiff seeks judgment for declaratory and injunctive relief along with monetary damages. This Court has jurisdiction of this civil proceeding pursuant to 29 U.S.C. § 216 (b), 29 U.S.C. § 217 and 28 U.S.C. § 1367.

4.

Venue lies in the Northern District of California pursuant 28 U.S.C. §§ 1391 (b). Moreover, Defendant Uber Technologies and/or Rasier-CA, LLC has its principal or a primary location located at 1455 Market St., Ste. 400, San Francisco CA 94103. Lastly such address as set forth ante is explicitly and specifically listed in Uber's driver (referred to as Uber Partner) agreement.

## **FACTUAL BACKGROUND**

5.

On or around Wednesday September 14, 2016 at 1:08 p.m. at Starbucks in San Mateo, CA, Plaintiff read Uber marketing information stating specifically and explicitly: "Be your own boss with Uber"; "Control your earnings potential"; "Set your own hours." See **Exhibit A**.

6.

VERIFIED COMPLAINT FOR LEGAL, DECLARATORY, AND INJUNCTIVE RELIEF

Plaintiff had very little cash on hand to pay for special training or schooling. Uber required its prospective California drivers to: possess a valid class "C" driver license (for at least 1 year), possess liability insurance, pass a background check, and a vehicle 2001 or newer.

7.

Upon reviewing Uber's marketing information as published on Uber's website (FACT ¶ 5), Plaintiff decided to move forward with driving for Uber. Plaintiff set up an appointment for a vehicle or around October 19, 2016 at or around 11:00 a.m. with an authorized Uber dealer Autocom Nissan of Walnut Creek, CA.

8.

Per Uber's vehicle requirements, Plaintiff's 1999 Toyota Camry did not qualify, merely, because the 1999 Toyota Camry was not a 2001 or newer model car. See **Exhibit B**.

9.

On same day, October 19, 2016 at or around 11:00 a.m. Plaintiff purchased a vehicle at Autocom Nissan of Walnut Creek, CA. Under the vehicle purchasing program, as a driver for Uber, the program allowed for a cash out of pocket down

VERIFIED COMPLAINT FOR LEGAL, DECLARATORY, AND INJUNCTIVE RELIEF

payment of only $250. Plaintiff paid $250 and purchased the vehicle specifically to drive for Uber.

10.

On or around October 19, 2016 at 5:57 p.m. Plaintiff signed up to drive for Uber (referred to as a "Uber Partner") following successful vehicle inspection at Uber's vehicle inspection location at or near Martinez, CA.

11.

As part of signing up as an Uber driver (referred to as Uber Partner), Plaintiff was required to enter a contract with Rasier-CA, LLC (a wholly owned subsidiary of Uber Technologies). If Plaintiff were to disagree to the contract or any terms thereof Plaintiff would not be able to sign up and earn fares with Uber. See **Exhibit C**.

12.

On or around October 26, 2016 at 9:53 a.m. Plaintiff sent an "Arbitration Opt-Out" email to the email address identified in the contract with Rasier-CA, LLC, in which Plaintiff specifically and explicitly expressed his intent to opt-out of any binding arbitration. See **Exhibit D**.

VERIFIED COMPLAINT FOR LEGAL, DECLARATORY, AND INJUNCTIVE RELIEF

On or around October 21, 2016, Plaintiff began accepting User transportation requests with Uber. The last date Plaintiff accepted a User transportation request was November 28, 2016.

14.

On November 22, 2016 at around 5:18 p.m. Plaintiff sent a support request to Uber with respect to an issue with a User. Plaintiff complained of being insulted, accident safety, and a threat from the User, whom Plaintiff nderstood   and believed to be an Uber non-driver employee.

15.

On or around December 21, 2016 at around 8:47 a.m. Plaintiff, from within his vehicle, attempted to sign on to the Uber Driver App and was unable to do so. A "security check" prevented Plaintiff from signing on to earn fares, when Plaintif☐ elected to work and earn fares. See **Exhibit E**.

16.

On or around December 21, 2016 at around 8:47 a.m., Plaintiff sent an Uber support request notifying Uber of the security check issue prventing Plaintiff from signing into the Uber Driver App in effect interfering with Plaintiff's earnings. Uber

VERIFIED COMPLAINT FOR LEGAL, DECLARATORY, AND INJUNCTIVE RELIEF

later responded essentially stating Plaintiff's Uber Driver App account was active. See **Exhibit F**.

17.

Plaintiff sent Uber a follow up Uber support message begging Uber support to resolve the issue. Plaintiff notified Uber support in the same suppt message that a legal complaint would be filed if the security check issue continued to interfere with Plaintiff's earnings. Uber support responded now stating that a "technical issue" was affecting some drivers. See **Exhibit G**.

18.

Since initially being prevented from signing on to the Uber Driver app on or around December 21, 2016 at 8:47 a.m., Plaintiff has attempted several times to sign on to the Uber Driver App, each time prevented from signing on to the Uber Driver App due to the same security check (FACT ¶ 15).

19.

Plaintiff has not earned any fares with Uber since the initial security check prevented him from signing onto the Uber Driver App.

20.

VERIFIED COMPLAINT FOR LEGAL, DECLARATORY, AND INJUNCTIVE RELIEF

The phrase shown in Uber Driver App, "security check" does not appear anywhere in the contract which Plaintiff was required to agree to as a condition to signing up to driver for Uber which Uber refers to as a "Uber Partner."

21.

At no time was it ever disclosed to Plaintiff that Plaintiff would have to submit to a security check or persistent security checks as a condition to signing on to earn fares when Plaintiff elected to sign on to earn income.

22.

On December 29, 2016 at or around 8:45 a.m. Steve Matias with SFO ground transportation compliance informed Plaintiff that Uber had 40,000 registered drivers.

23.

After learning of the 40,000 registered drivers, Plaintiff discovered Uber was and is apparently focused on "Uber Growth" which includes increasing the volume of Uber drivers (which Uber refers to as Uber partners) on the road receiving User transportation requests.

24.

~ 11 ~

VERIFIED COMPLAINT FOR LEGAL, DECLARATORY, AND INJUNCTIVE RELIEF

At no time prior to (FACT ¶ 23) was Plaintiff aware of Uber's 40,000 registered drivers prior to Plaintiff purchasing the vehicle to driver for Uber.

25.

Upon information and belief Plaintiff understands that Uber has ongoing Uber driver recruitment efforts which Plaintiff believes acts an Uber driver (which Uber refers to as Uber Partner) revolving door.

26.

Plaintiff has ongoing direct costs of driving for Uber (which Uber refers to as an Uber Partner) of approximately $472 weekly. This figure included car payments, insurance, vehicle maintenance, wear & tear, and gasoline. Plaintiff was never reimbursed for any of the stated direct costs accrued for any week in which Plaintiff earned fares with Uber.

27.

Plaintiff's ongoing direct costs of driving for Uber (which Uber refers to as an Uber Partner) of approximately $472 weekly does not include any taxes whatsoever such as self-employment tax, social security tax, or any contribution to unemployment insurance tax.

~ 12 ~

VERIFIED COMPLAINT FOR LEGAL, DECLARATORY, AND INJUNCTIVE RELIEF

**28.**

Uber sets and controls the fare model and collection of fares from the User. Plaintiff is not involved with the collection of or a price estimate of what a User will pay as a fare. Uber's fare model includes: Base (fee/fare) + Time + Distance. See **Exhibit H**.

**29.**

Uber employs what is referred to as a five-star rating system. As of the time, Plaintiff last earned a fare with Uber, he was required to maint□in a 4.8 ratingin which Plaintiff's ratings are exclusively provided by Users. Plaintiff's failure to maintain the required driver rating could result in Plaintiff being compelled for "training" and/or deactivation from the Uber Driver App.

**30.**

Upon information and belief Uber serves two masters, one being the User and the other being the driver or what Uber refers to as an Uber partner. Plaintiff believes, in this type of relationship Plaintiff has been or easily can be exploited and "hung out to dry" since Uber obtains revenue directly from the User.

**31.**

VERIFIED COMPLAINT FOR LEGAL, DECLARATORY, AND INJUNCTIVE RELIEF

A User cannot request Plaintiff as a preferred driver (what Uber refers to as Uber partner) using either an UberX or UberPool transportation request. The good will for a job well done by Plaintiff effectively transfers to Ube , which Plaintiff has witnessed being referred to by Users as a "Good Uber Driver."

32.

The U.S. Department of Labor, Wage and Hour Division published □d supports the economic realities test to determine if a worker "is economically dependent on an employer who can require (or allow) employees to work and who can prevent employees from working." See **Exhibit I**.

## COMMON ALLEGATIONS

33.

Contrary to Uber's assertions in the driver (referred to as Uber artner) agreement, Uber Technologies is not merely a technology compan providing technology services. Uber drivers or Uber partners are essential□td Uber earning revenue from Users. Without Uber drivers or Uber partners, Uberould earn no income from the alleged technology service that connects Users with Uber drivers.

VERIFIED COMPLAINT FOR LEGAL, DECLARATORY, AND INJUNCTIVE RELIEF

## 34.

Furthermore U.S. Department of Labor's Wage and Hour Division policies and/or interpretations, in certain circumstances, are, generally, entitled to some deference. See *Christensen v. Harris County, 529 U.S. 576, 587 (2000)*; *Chevron, 467 U.S. at 842*; *Skidmore v. Swift & Co., 323 U.S. 134 (1944)*.

## 35.

Even in a self-driving car scenario, specifically in the state of California, Uber has, previously, admitted that such a technology is not ready to function without a human operator in the vehicle that could assume control of the vehicle. Furthermore, Uber's permit to operate and test the self-driving car pilot program/technology was revoked by the California DMV on or around December 21, 2016.

## 36.

The fares Plaintiff received as payout or wages did not account or the significant cost of operating and maintaining equipment which equipment Plaintiff purchased through incurring debt. Even when driving for Uber, Plaintiff noticed quickly that the numbers did not seem to add up in terms of the prevailing minimum wage.

~ 15 ~

VERIFIED COMPLAINT FOR LEGAL, DECLARATORY, AND INJUNCTIVE RELIEF

37.

Moreover, upon information and belief, through what seemed to Plaintiff to be an unusually high number of UberPool requests compounded with $5.00 (before Uber's commission of 25%) User ride cancellation fees, and wait times online in "driver mode" there were periods or hours where Uber paid Plaintiff $3.75 or less in fares; at no time was Plaintiff paid overtime wages.

38.

Plaintiff upon information believes Uber has a backdoor into what Plaintiff refers to as Uber's Ride Request Management System ("RRMS") whereas Uber can and does control which Uber drivers (referred to as Uber Partners) can drive and earn wages as Uber sees fit. Moreover, Plaintiff believes that Uber can peer into its RRMS and forward User ride requests to Uber drivers to pick up a User in an "undesirable area" – which is defined as an area with low or no volume User ride requests. On more than one occasion, Plaintiff was sent 20, 30, 40 or more miles away to transport a User to an area such as Santa Cruz, CA and surrounding areas whereas Plaintiff had to drive back to desirable or high volume User ride request areas on his own dime, in whole or part.

~ 16 ~

VERIFIED COMPLAINT FOR LEGAL, DECLARATORY, AND INJUNCTIVE RELIEF

**39.**

Uber's "driver undesirable location" practices have led Plaintiff, on more than one occasion, to "drive around" seeking desirable User ride request locations, in hopes of obtaining a User ride request, which, ultimately, has led to Plaintiff driving more than 8,000 miles (in less than two short months) since acquiring the vehicle, specifically, to drive for Uber.

**40.**

At a rate of 8,000 miles or more driven continuously, even if Plaintiff was allowed by Uber to do so, would likely amount to the usefully life of the vehicle exhausted in 3 years if not faster, whereas the debt incurred to acquire the equipment would continue years beyond such useful equipment life.

**41.**

Plaintiff further believes, the unreimbursed equipment expenses acquired to drive, specifically, for Uber compounded with Plaintiff's compulsory tax obligations essentially equates the relationship with Uber, per Uber's contractual agreement, as one of indentured servant labor whereas there is no real opportunity for profitability.

**42.**

~ 17 ~

VERIFIED COMPLAINT FOR LEGAL, DECLARATORY, AND INJUNCTIVE RELIEF

Plaintiff further believes such a relationship has been and/or would be especially beneficial to Uber as Uber would actively maintain Plaintiff and other Uber drivers, longer, in turn earning a massive windfall volume of fares for Uber, with Plaintiff, hopelessly, trying to pay down equipment debt and earn a living in the process.

## CAUSES OF ACTION

## COUNT I

## FSLA MINIMUM WAGE CLAIM

43.

Plaintiff incorporates ¶¶ 1-42 as though fully set forth herein.

44.

Upon information and belief, Defendant Uber and/or Mr. Kalanick is, has been and continues to be an employer engaged in commerce (interstate) and/or in the production of goods for commerce as defined per 29 U.S.C. § 203.

45.

VERIFIED COMPLAINT FOR LEGAL, DECLARATORY, AND INJUNCTIVE RELIEF

Plaintiff further believes, during the relevant times, stated herein, Defendant Uber and/or Mr. Kalanick employed Plaintiff as an employee as de☐ined in 29 U.S.C. § 203.

46.

Defendant Uber and/or Mr. Kalanick as an employer was required to pay Plaintiff the prevailing minimum wage per the FLSA for each hour worked.

47.

Upon information and belief Uber and/or Mr. Kalanick knowingly and willfully did not pay Plaintiff the prevailing minimum wage, for each hour worked, under the FLSA.

48.

Plaintiff seeks recovery of damages for unpaid compensation and/or wages, FLSA liquated damages, costs, and any other relief the Court deems just and proper.

## COUNT II

## FSLA OVERTIME WAGE CLAIM

49.

~ 19 ~

VERIFIED COMPLAINT FOR LEGAL, DECLARATORY, AND INJUNCTIVE RELIEF

Plaintiff incorporates ¶¶ 1-48 as though fully set forth herein.

50.

Upon information and belief Plaintiff worked more than forty (40) hours per week during the relevant period as identified herein.

51.

Plaintiff further believes that Defendant Uber and/or Mr. Kalanick knowingly and willfully did not pay Plaintiff overtime wage for each hour worked exceeding forty (40) hours per work-week.

52.

Plaintiff seeks recovery of damages for unpaid overtime compensation and/or wages, FLSA liquated damages, costs, and any other relief the ourt deems just and proper.

## COUNT III

## FSLA RECOVERY OF EQUIPMENT COSTS CLAIM

53.

Plaintiff incorporates ¶¶ 1-52 as though fully set forth herein.

54.

~ 20 ~

VERIFIED COMPLAINT FOR LEGAL, DECLARATORY, AND INJUNCTIVE RELIEF

Upon information and belief, Defendant Uber and/or Mr. Kalanick, required Plaintiff to pay the costs and expenses for purchasing, acquiring and maintaining insurance, and maintenance of the equipment, which equipment was essential and required for Plaintiff to perform his job, thereby reducing Plaintiff's wages below the prevailing minimum wage per 29 U.S.C. § 206 (a); 29 C.F.R. §531.35 .

55.

Upon information and belief Defendant Uber and/or Mr. Kalanick knowingly and willfully violated the provision of the FSLA, whereas Plaintiff is entitled to recover all monies paid for the required and essential equipment i.e. "tools of the trade," which was, specifically, acquired and used in furtherance of Uber and/or Mr. Kalanick's business. Moreover, Plaintiff seeks recovery of the costs of this action, liquidated damages, and pre-judgment interest as determined.

## COUNT IV

## INTENTIONAL MISREPRESENTATION

56.

Plaintiff incorporates ¶¶ 1-42 as though fully set forth herein.

57.

VERIFIED COMPLAINT FOR LEGAL, DECLARATORY, AND INJUNCTIVE RELIEF

Upon information and belief, Uber, under the direction, authority or permission of Mr. Kalanick represented to Plaintiff that he would be his own boss, have contrⓁl over his hours worked and therefore control over his earnings per statement of fact, hereinafter, ("SOF") ¶ 5. Plaintiff further believes Mr. Kalanick knew that Plaintiff would not truly be his own boss but, in reality, Mr. Kalanick exercised considerable control over Plaintiff's ability to work and therefore control over Plaintiff's earnings.

58.

Furthermore, Plaintiff believes Mr. Kalanick's representations were intentionally made to induce Plaintiff into a contractual agreement as an Uber driver (referred to as Uber Partner). Plaintiff believes the motive for such inducement was to create a long or longer term Uber driver (referred to as Uber Partner) contractual relationship whereas Uber could earn fares for longer periods of time, all the while avoiding payment of federal and/or state employee related tax(es) with respect to Uber and/or Mr. Kalanick's relationship with Plaintiff, which Plaintiff further believes would be and is consistent with Uber's growth strategy.

59.

VERIFIED COMPLAINT FOR LEGAL, DECLARATORY, AND INJUNCTIVE RELIEF

Plaintiff having no reason to question Mr. Kalanick's representations, prior to establishing a relationship with Mr. Kalanick, relied on Mr. Kalanick's representations, as Plaintiff saw a ubiquitous presence of Uber including signage at major coliseums and ball parks such as Oracle Arena, SAP Center, and Levi Stadium, along with radio advertising to recruit drivers (referred to as Uber Partners) on local San Francisco bay area radio stations, and even songs such as "Uber Everywhere." Furthermore, Plaintiff never worked for Mr. Kalanick in the past and was unaware that Mr. Kalanick's representations would be or could be false.

60.

Plaintiff, since relying on Mr. Kalanick's representations, has been injured in that Plaintiff has not been able to act as his own boss, by going online into "Driver Dode" via the Uber Driver App to earn fares. Such has resulted in a significant loss in earnings and ability to satisfy debt incurred to purchase equipment specifically to drive for Uber.

## COUNT V

## NEGLIGENT MISREPRESENTATION

61.

~ 23 ~

VERIFIED COMPLAINT FOR LEGAL, DECLARATORY, AND INJUNCTIVE RELIEF

Plaintiff incorporates ¶¶ 1-42 as though fully set forth herein.

62.

Upon information and belief Uber, under the direction, authority or permission of Mr. Kalanick represented to Plaintiff that he would be his own ☐oss, have control over his hours worked and therefore control over his earnings per statement of fact, hereinafter, ("SOF") ¶ 5. Plaintiff further believes Mr. Kalanick did not have a reasonable basis to assert that Plaintiff would be his own boss but that Mr. Kalanick truly would be and is Plaintiff's boss. Plaintiff further believes Mr. Kalanick is Plaintiff's boss through Mr. Kalanick's exercising considerable control over Plaintiff's ability to work and therefore control over Plaintiff's ear☐ings.

63.

Furthermore, Plaintiff believes Mr. Kalanick's representations were intentionally made to induce Plaintiff into a contractual agreement as an Uber driver (referred to as Uber Partner). Plaintiff believes the motive for such inducement was to create a long or longer term Uber driver (referred to as Uber Partner)ontractual relationship whereas Uber could earn fares for longer periods of time, all the while avoiding payment of federal and/or state employee related tax(es) with respect to Uber

VERIFIED COMPLAINT FOR LEGAL, DECLARATORY, AND INJUNCTIVE RELIEF

and/or Mr. Kalanick's relationship with Plaintiff, which Plaintiff fu□ther believes would be and is consistent with Uber's growth strategy.

64.

Plaintiff having no reason to question Mr. Kalanick's representtions, prior to establishing a relationship with Mr. Kalanick, relied on Mr. Kalanick's representations, as Plaintiff saw a ubiquitous presence of Uber including signage at major coliseums and ball parks such as Oracle Arena, SAP Center, and Levi Stadium, along with radio advertising to recruit drivers (referred to as Uber Partners) on local San Francisco bay area radio stations, and even songs such as "Uber Everywhere." Furthermore, Plaintiff never worked for Mr. Kalanick in the past and was unaware that Mr. Kalanick's representations would be or could be false.

65.

Plaintiff, since relying on Mr. Kalanick's representations, has □en injured in that Plaintiff has not been able to act as his own boss, by going online into "driver mode" via the Uber Driver App to earn fares. Such has resulted i□significant loss in earnings and ability to satisfy debt incurred to purchase equipment specifically to drive for Uber.

VERIFIED COMPLAINT FOR LEGAL, DECLARATORY, AND INJUNCTIVE RELIEF

## COUNT VI

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

66.

Plaintiff incorporates ¶¶ 1-65 as though fully set forth herein.

67.

Upon information and belief Defendant Uber and/or Mr. Kalanick had and/or has a duty to allow Plaintiff to "Be His Own Boss" and "Work When He Wanted to Work" and not interfering with Plaintiff's earnings. Plaintiff further believes such duty is evidence by Uber's agreement with Plaintiff as an Uber driver (referred to as an Uber Partner).

68.

Upon information and belief, Defendant Uber and/or Mr. Kalanick breached such duty by, directly and/or indirectly, interfering with Plaintiff's earnings by injecting or otherwise allowing a "technical issue" to persisthereby preventing Defendant from going online in "Driver Mode" in exercising his prerogative to work when he wanted to work as his own boss.

69.

VERIFIED COMPLAINT FOR LEGAL, DECLARATORY, AND INJUNCTIVE RELIEF

Upon information and belief, Defendant Uber and/or Mr. Kalanick's breach of duty owed Plaintiff, is the direct and proximate cause of Plaint☐f's serious and persistent emotional distress including serious anxiety with respect to his ability to meet financial obligations for equipment purchasing specifically to work for Uber, persistent worry, physical and mental pain and suffering, and mental anguish.

## COUNT VII

## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALINGS

70.

Plaintiff incorporates ¶¶ 1-69 as though fully set forth herein.

71.

Upon information and belief, Plaintiff entered a contractual agreement with Uber and/or Mr. Kalanick. Plaintiff held up his end of the bargain and performed per the terms of the agreement including Plaintiff maintaining a 4.88 driver rating, a least 9 compliments on Plaintiff's service as submitted to Uber by Users, a host of "badges" accumulated such as "entertaining driver", "excellent service", "above and beyond", "neat and tidy" and so on. In doing so, the conditions were met for Uber to meet its

VERIFIED COMPLAINT FOR LEGAL, DECLARATORY, AND INJUNCTIVE RELIEF

end of the bargain, yet Uber failed to do so through repeated bogus "security checks" which Plaintiff believes were not in good faith but were put into place after Plaintiff complained to Uber on November 22, 2016 of an incident which☐Plaintiff believes involved an Uber employee.

72.

Furthermore, Plaintiff believes he had every right to receive the benefits as outlined in the agreement and would have done so but for Uber's interference with Plaintiff's ability to be his own boss and exercise his suposed right to work when he wanted to, which Uber and/or Mr. Kalanick had a duty to refrain from such interference with Plaintiff's ability to be his own boss. Uber's and/or Mr. Kalanick's interference with the benefits as outlined in the agreement has caused Plaintiff a significant loss in earnings and Plaintiff has consistently and persistently, since first reporting the interference to Uber, been unable to log on into "driver mode" and earn fares.

**PRAYER**

WHEREFORE, Plaintiff prays for judgment against Defendant Uber and/or Mr. Kalanick as follows:

~ 28 ~

VERIFIED COMPLAINT FOR LEGAL, DECLARATORY, AND INJUNCTIVE RELIEF

**Regarding the first claim of relief:**

1. Recovery of unpaid compensation and/or wages, FLSA liquated damages, and costs.

2. Declare Plaintiff an employee of Uber and/or Mr. Kalanick.

3. Enjoin Uber and/or Mr. Kalanick from further violations of the FSA with respect to Plaintiff.

**Regarding the second claim of relief:**

1. Recovery of unpaid compensation and/or wages, FLSA liquated damages, and costs.

2. Declare Plaintiff an employee of Uber and/or Mr. Kalanick.

3. Enjoin Uber and/or Mr. Kalanick from further violations of the FSA with respect to Plaintiff.

**Regarding the third claim of relief:**

1. Recovery of the costs of this action, liquidated damages, and pre-judgment interest.

2. Declare Plaintiff an employee of Uber and/or Mr. Kalanick.

3. Recovery of equipment purchasing costs of $28,000.

~ 29 ~

VERIFIED COMPLAINT FOR LEGAL, DECLARATORY, AND INJUNCTIVE RELIEF

4. Enjoin Uber and/or Mr. Kalanick from further violations of the FSA with respect to Plaintiff.

**Regarding the forth claim of relief**:

1. Void the contractual agreement between Uber and/or Mr. Kalanick □nd Plaintiff.

2. Exemplary damage per Cal. Civ. Code § 3294.

3. Economic and non-economic damages of $50,000.

**Regarding the fifth claim of relief**:

1. Void the contractual agreement between Uber and/or Mr. Kalanick and Plaintiff.

2. Economic and non-economic damages of $50,000.

**Regarding the sixth claim of relief**:

1. Void the contractual agreement between Uber and/or Mr. Kalanick □nd Plaintiff.

2. Economic and non-economic damages of $50,000.

**Regarding the seventh claim of relief**:

1. Economic and non-economic damages of $50,000.

2. Punitive damages.

**Regarding all claims of relief**:

VERIFIED COMPLAINT FOR LEGAL, DECLARATORY, AND INJUNCTIVE RELIEF

1. An order for Defendant(s) Uber to pay Carter's costs of the suit incurred, herein, including attorney fees to the extent incurred pursuant the work expended for this action.

2. Equitable recover of Plaintiff's time pursuing this action.

3. Any further relief that this Court deems just and proper.

VERIFIED COMPLAINT FOR LEGAL, DECLARATORY, AND INJUNCTIVE RELIEF

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury in this action.

DATED: January 2, 2017

_____

Darryl Carter
Appearing Pro Se

VERIFIED COMPLAINT FOR LEGAL, DECLARATORY, AND INJUNCTIVE RELIEF

## <u>VERIFICATION</u>

The undersigned for himself declares:

I am the plaintiff in the above captioned action. I have read the foregoing complaint and know the contents and exhibits attached thereto. With respect to the causes of action I allege, the same is true of my knowledge, except as to those matters which are therein stated on information and belief, and, as to those matters, I believe them to be true.

I declare under the penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was ecuted on    January 2, 2017 at Concord, California.


_____

Darryl Carter
Appearing Pro Se

VERIFIED COMPLAINT FOR LEGAL, DECLARATORY, AND INJUNCTIVE RELIEF